Alfred Hwang, Certified Law Student, appearing on behalf of Petitioner Mr. Domingo Musquiz under the supervision of Catherine Davis and the UC Irvine Appellate Litigation Clinic. I respectfully request three minutes for rebuttal. This court should reverse the Railroad Retirement Board's decision for several reasons. First, the Board's failure to consider Mr. Musquiz's ability to understand his reporting requirements, despite evidence of that inability, is grounds for reversal. Why? The Board's unregulation states that, when determining fault, the Board must consider ability of the overpaid individual to understand reporting requirements of the RA or to realize he or she is being overpaid, using factors such as age, education, special comprehension, physical and mental condition, and they failed to do so. Did Mr. Musquiz raise any issues as to his ability to understand? He did, Your Honor. In what way? Multiple ways. In the testimony, for example, in pages 186, 187, 189, 191, there are many examples of him not remembering what he signed or received, read, not being able to comprehend some of these materials. The memorandum from the district manager to the debt specialist in the very first instance on page 134, the district manager says that Mr. Musquiz asserted that he misunderstood and was ignorant about what was going on, did not have the technical ability to understand all the information provided to him. And I stress technical ability because, again, according to the Board's own regulations, it had to consider ability of the overpaid individual to understand the reporting requirements of the RA. And not only that, Your Honor, the factors include age, education, comprehension, physical and mental condition, and multiple points in the record. Before even getting to the ALJ in this matter, the hearings officer, Mr. Musquiz says that he's diabetic. He's a type 1 diabetic. He has kidney, prostate, heart conditions. He's got deteriorating health issues, and this is on pages 143 and 170 of the hearings record. Multiple times he brings it up to the hearings officer. The hearings officer does not mention it, does not mention the type 1 diabetes, does not mention, you know, ability to understand reporting requirements, things like age, education, comprehension, and physical and mental condition. Did they send him any kind of a questionnaire to show what his education was, or did they already know his health and all that? They would have known that, wouldn't they? They did send a financial disclosure where, as part of the financial disclosure and trying to explain some of his finances, Mr. Musquiz said that he had diabetes, Your Honor. But they didn't know about his education or any of that stuff? No, Your Honor. Nothing in the record points to his education. And according to this court in Anderson, in one of the footnotes, pertinent circumstances must be explicitly addressed when determining fault. And here these circumstances are more than pertinent. They go to comprehension. They go to physical and mental condition. Again, these are things that the board itself, in its own regulation, state that it must consider. Again, according to this court in Anderson, it must be explicitly addressed, not just considered. These all go to subjective elements of fault. This court has stated in the alibis as well, fault determination, at least in a social security context, is highly subjective, highly individualized, and highly dependent on the interaction between the intentions and state of mind of the claimant, the peculiar circumstances of the situation. All this to say that the Railroad Retirement Board had an obligation to consider these subjective circumstances, to consider these pertinent circumstances, and the death specialist, the hearings officer, and the board itself did not consider that, and that is grounds for reversal in itself. But these mistakes, these errors, are exacerbated because Mr. Musquiz preceded pro se. This court in Cox v. Califano states, ALJs, in this case the hearings officer, have a heightened duty and must scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts, while being especially diligent in ensuring that favorable as well as unfavorable facts are elicited. Did Mr. Musquiz ever say that he didn't understand the computation or he didn't understand what was expected of him? He states in his hearing testimony that he doesn't even remember. You're not answering my question. Not being able to remember is not the same thing as being able to understand what he's representing. Did he ever say, I don't understand the regulations regarding estimating income other than RRP and how I should report it? Is there any evidence of that? That's my recollection, Your Honor, and I'll go back into the testimony. But, again, even if he didn't state that he didn't understand specifically, these factors including age, education, comprehension, physical and mental condition, I would submit to the court that they also go into not just understanding but remembering, but knowing these subjective elements as well. Thank you, Your Honor. I have a question if I may. Yes, Judge Gold. For the years after 2012, after he had disclosed his extra income, after that disclosure was made, didn't he continue to receive the annuities without changing the amount based on the extra income he had? Your Honor, Mr. Muskies didn't disclose this, per se, until 2015 when he was asked by the Railroad Retirement Board. But this goes back to our second point. The Railroad Retirement Board did know about these wages from 2013 on. And so this independent reason failure to consider the Board's own role with these letters from June 2013 to December 2015 requires reversal of remand in its own right. I point to the letters, as, Judge Gold, I think you're referring to. These letters are facially misleading, as the dissenting member points out. The letters, and this is on page 82, 86, and 90 of the administrative record. At the beginning, they state your monthly annuity payments have been adjusted. Then they show the work. They show how the annuity payments have been adjusted. Then they state additional wages that you earned outside the railroad industry are now available to include in the Tier 1 portion of your annuity. And this could have led any reasonable person in Mr. Muskies' shoes to believe that not only does the Railroad Retirement Board have his wage information, indeed it did, but that it has already calculated the differences with this wage information in mind and done it for them, and there's no longer a reporting requirement. Indeed, I point the Court to the dissenting member's opinion. He says, as of 2013, the IRB was aware of Mr. Muskies' earnings, but after receiving the first letter, why would Mr. Muskies think there was any need for him to report his wages? He certainly made no attempt to mislead. Did the Railroad Retirement Board know exactly how much he was making? Did he fill that out and send it in to them? They did through a Social Security wage match. So as of June 2013, Your Honor, when the Railroad Retirement Board sent that first letter to Mr. Muskies, they were aware of Mr. Muskies' wages outside the Railroad Retirement Board. The Social Security Administration reported the wages that Muskies earned outside from the hospital to the IRB, right? Yes, Your Honor. At the very least, there was some kind of wage match done between the Railroad Retirement Board and the Social Security Administration, but yes, the Board was aware of those wages from June 2013 through December 2015. And is there any indication that they said the adjustments were irregular or there's a presumption of regularity in governmental work? It's been around for a long time, since 1926. Was there any indication that Muskies had done anything wrong in reporting his income? No, Your Honor. The letters clearly state that they have the wages and they're calculating his annuity. And this happened three times. There are three letters between June 2013 through December 2015, which make it very clear to Mr. Muskies that they have his wages and they've changed his annuity. And the SSA report shows that he was earning between $41,000 and $45,000 in those three years. Yes, Your Honor. That was reported to the IRB. And they said additional wages that you've earned outside the railroad industry are now available to include in the Tier 1 portion of your annuity. And then they started paying him his annuity. Yes, Your Honor. Yes. Facially misleading, as the dissenting member pointed out. So at the very most, objectively misleading, and something that I think this Court can reverse and remand at least to June 2013 to December 2015 without a hearing because they are so objectively misleading. But at the very least, this Court can reverse and remand to hold to gather additional facts as to whether or not it's subjectively misled Mr. Muskies because it's on the record. The hearings officer, the debt specialist, the railroad. But there are two elements to the IRB. One is that the reporting worker not be at fault. And the second is sort of a vague thing. His actions have to be consistent with equity and good conscience. Correct, Your Honor. Address yourself to that. Why does Muskies' action constitute fulfillment of equity and good conscience? Well, Your Honor, as the dissenting member stated, I think we would submit at this time that the record is stale and that the Court should remand to conduct additional fact-finding as to whether or not Mr. Muskies has met this factor. But if this Court would consider that the record is very complete, Mr. Muskies, or the government has stated that Mr. Muskies, at least in the government's answering brief, that Mr. Muskies has submitted evidence that he has shown that there's equity and good conscience or that it meets at least the Railroad Retirement Act's purposes because What evidence is that? That the financial disability can't afford a haircut. Not only that, Your Honor, but that he relied on the Railroad Retirement Board's annuity payments to buy a house, that he relied on these payments for his diabetes medication, and for otherwise, you know, without these payments or with these deductions, he'd be at the very edge of sustenance. Unless this Court has any further questions, I will reserve the balance of my time. I have a question for you, if I may, please. Yes, Your Honor. So, I understand the basis of this claim very well, of the annuity years commencing 2013, but what's your position on what we should do with the 2012 annuity year when the annuity, as I understand, was paid before the Board was aware of the added income? Your Honor, our position is that this Court should reverse remand because the Board failed in its legal obligations to consider the subjective elements of abilities to understand reporting requirements, comprehension of physical and mental condition, because even though the evidence was clear in the record and it was pertinent. Thank you, Your Honors. Thank you. Mr. Polk. Good morning, Your Honors. Patrick Polk on behalf of the Respondent U.S. Reservoir Retirement Board. This case, at its core, is straightforward. Mr. Muska is required by law to repay his Railroad Retirement Act annuity overpayment because he does not qualify for waiver. The record shows, and the Railroad Retirement Board correctly found, that Mr. Muska was not without fault in causing his overpayment because he was at fault, because he knew or should have known, the second half of that being most important, that he was required to report to the RRB both, one, his excess earnings, and, two, that he return to his job at SBC Hospital, his last non-Railroad pre-retirement employer. Petitioner's argument repeatedly emphasizes that Mr. Muska did not have a subjective or technical understanding of the reporting requirements, but it completely fails to address the issue of whether Mr. Muska had the capacity to understand them. It is unfortunate that Mr. Muska has reports that he has financial difficulties that have been exacerbated by the passing of his wife. However, the law is clear that the RRB must recover the overpayment, and we cannot reach the issue of his financial circumstances. Was it improper for him to think that the government, through Social Security, was already advising the Railroad Retirement Board about this extra income, and so he shouldn't have to tell them about it again? It's the Board's position that, yes, that is improper. The law explicitly puts the burden on Mr. Muska to affirmatively report his excess earnings. It does not relieve him of his duty to report to the RRB just because of wage match information from the SSA. In fact, he cannot rely on the SSA providing wage match information. This case is a clear example of exactly why the Railroad Retirement Act and the Board's regulations put this affirmative requirement onto annuitants, because there can be a delay in both the reporting from the SSA and also in processing and realizing that there is a deduction that applies. Specifically, the key letters that are being pointed to are the June 2013, 2014, and 2015 letters. Importantly, those letters do not state that he has no more duty to report his excess earnings. They do not make it clear that it is taking into account earnings limitations because he is under full retirement age. Wait a minute. Take a look at those letters. Your monthly annuity payments have been adjusted. Yes. Does that tell the person who gets that that everything is hunky-dory? I don't believe so, Your Honor. Specifically, of course, importantly, these letters are notifying him of an increase in his annuity because of additional earnings that would fall under Social Security. An increase in the annuity because of his income? All these three letters are notices of an increase in his annuity because he had additional earnings that fell under Social Security, which is the Tier 1 portion. So the adjustment, he should have been aware that the adjustment contemplated in these letters does not take into account any applicable deductions because he had a greater annuity after these letters came through. Well, let me ask you this. The SSA, the Social Security notification, is what the earnings are, right? Doesn't that tell the RRB where they came from? Yes, I believe. So doesn't that evidence he's going back to his old job? Yes, but, again, as you can look at the letters, again, it is administrative record page 82, 86, and 90. These are machine letters that are just a notice of an increase in annuity because he has any additional earnings outside the rail industry. It does not say where he worked in the letters. None of that is considered when this letter is automatically generated. It's just SSA gave us information that you have more work history. Therefore, your annuity was increased because you have greater earnings outside the rail industry, and that's all. So it wasn't considered, and, again, specifically because this process, the RRB obviously has a lot of annuitants. This letter does not contemplate any possible deductions, and it doesn't say anything about deductions. And, again, most importantly, both the RRB itself explicitly requires the individuals to report excess earnings, and also the RRB's regulations say that even if there's an error on the part of the agency, it does not extinguish the fault on the part of the annuitant. That's 20 CFR 255.11d4. Are you claiming that there is a difference between what the SSA reported as earnings and what Mr. Muskie's should have reported as earnings? I believe that most likely the information is accurate from SSA. I think the numbers and the... My question is to Polk. Are you, the government, claiming there's a difference between what he actually earned and should have reported and what SSA reported he earned? I got out of what I was trying to answer. I believe that the SSA information is accurate and would be in alignment with what he said. Are you claiming that the RRB was misled as a result of failure to say what his earnings were by Mr. Muskie's, nor is the RRB misled by failing to say he'd gone back to work to his old job because they knew where his money was coming from from the hospital? So as a result of the SSA, the RRB had precisely the same information which Mr. Muskie's was required to give the RRB. True? Yes, and there's no accusation that he attempted to deceive. So it's not his fault? The fault is in failing to report. What's the damage to the RRB? The damage is paying excess funds out of the trust. They didn't pay excess funds because the adjustments were made. They paid excess funds because he did not tell us that he returned to work for SPC Hospital or had excess earnings, and therefore no deductions were applied. Well, I'm confused. If the RRB had exactly the information which Muskie's, you claim, should have given them personally, and they made a calculation and they made an overpayment, the fault might be with RRB, not with Mr. Muskie's. Have you investigated the person who made the error? Our position is that there was no error made. It is not like there was a miscalculation on the part of the RRB, that his benefits were improperly calculated beyond what his earnings should have shown based on the information. And who did the calculation? I mean, a claims adjuster, I'm sure, within the RRB. Did you go after him? No, Your Honor. Well, okay. Again, I specifically want to point out that the RRB Section 2E4, which is 45 U.S.C. 231A.E4, explicitly puts the burden on the inhabitant to report excess earnings. So it is a duty that he owes. Even if it had been the same information that the SSA provided to him, this is the exact sort of scenario where it shows that it cannot be immediately adjusted for all possible deductions. So Mr. Musk was still of the duty to notify the RRB, even though SSA provided earnings information. And if he had notified the RRB with precision, the same result would have happened, right? I don't believe that's accurate, Your Honor, because then he, first of all, the analysis would be completely different as far as the RRB's fault regulations, because he was found at fault because he did not report information he knew or should have known was material. And so if he did provide that information, if he reported the information he should have reported, those numbers would have been precisely the same as the SSA. True? Yes. Thank you. Okay, I'll tell Judge Gould if I could ask you a question. Yes, Your Honor. I think I share the concern that Judge Fahy is suggesting. It was how can he really be at fault after the agency has all the information about his income? So why don't you give me your best argument on that? Again, the primary reason is because the letters themselves, even if they're beyond confusing and actually an error on the part of the RRB, 20 CFR 255.11 D4 specifically says that does not relieve Mr. Musquiz of being at fault specifically for providing information that he knew or should have known. And importantly, very distinguishable from the cases cited in opposing counsel's briefs, this is a very easy requirement to fill. The information requested is very straightforward, and he was warned multiple times that he had to provide it. Specifically, I want to turn to the application form itself in the record that in all capital letters said that he had to report if he returned to SPC Hospital. Even if Mr. Musquiz is claiming that he did not have a subjective understanding of the requirements or the consequences of the requirements, the application form itself was extremely brief and clear and said you must report if you earn over the annual exempt earnings amount, and you must report if you return to SPC Hospital, and he did not do so. The questions asked by Your Honor were very on point regarding Mr. Musquiz's raising of the issues with his understanding. He did not provide any explanation for how he could fail to understand these straightforward forms. There's no evidence in the record that he was incapable of understanding what was required of him. He didn't raise any issues about his age, education, or physical or mental condition that could have led to not understanding the simple form itself. Was the Social Security Administration sending this information to the Railroad Retirement Board? They tend to do that if he's working and they're taking out Social Security funds. Did they do that? Again, that's the way to match information that's been discussed. So generally, yes, in here, the information was provided from SSA to the ROB. Let me ask you once again because I don't know as much as you obviously do about the operation of this agency. Had Mr. Musquiz done everything exactly right and said these are my earnings from my hospital work and I've gone back to my old job and he reported the numbers which the SSA had reported to the ROB, as coming from the hospital, how would that have changed the ROB payments to him? They would have been deducted if he notified us. That's exactly it. They would have been deductible? They would have applied the excess earnings and LPE deductions if he had notified us because it would have been flagged to be processed for possible deductions. And again... And when you learned that from the SSA, they weren't flagged? Correct. Again, it's just a mechanical process of you have these earnings and therefore your Tier 1 goes up because you have more earnings that fall under SSA. But if the same information is given to the ROB by SSA as should have been given by Musquiz, tell me why the product is different. Because when there is an adjustment for outside earnings, it just cannot be administratively done where every possible deduction is counted against the earnings. And therefore, that is where the ROB specifically puts the burden on the annuitant. They are the ones in the best position to know if they have done any of the things in the short list of things on the application, such as returning to work for one specific employer or specifically exceeding one annual amount. They are the ones in the best position to know if they have met those criteria and have the affirmative duty to report to the ROB. So the ROB doesn't deduct outside earnings from the annuity if the applicant doesn't report it, even though the information which would justify the deduction was in the hands of the ROB? And again, if you notice, the first letter was issued in June of 2013. If he doesn't have it, he has, right? The answer is, I'm sorry, could you rephrase that? Why is there a deduction if there is a report by the annuitant, but no deduction if there is no report by the annuitant when the information to the ROB is identical? Just administratively, it has to be flagged, or there will be a long delay, such as there was here in December of 2015 when it was first realized by the ROB. Just administratively, it is not run against every possible deduction, and so it is different when a person affirmatively reports to the ROB versus just processing and receiving information on a delay. So the ROB doesn't flag the return for computation of the deduction unless the annuitant makes a report, even though it has that information. I think ultimately it was found in December of 2015, but yes, not immediately when the first letter is generated. Thank you. John, do I have a question for you further? Yes, Your Honor. If at least once the agency has the information, why isn't this a situation that brings to mind the slang expression, no harm, no foul? I believe, Your Honor, that there's the harm in that no deduction was applied. I'm sorry, I don't understand how it applies in this situation, because the harm is just overpaying the annuity benefits, and that occurred here. I'm sorry. If the payments are overpaid by the board after it has the proper information, why isn't it the board that's at fault rather than the awarder? Because the regulation specifically states when the person knew or should have known that they had to report material information to the ROB, and here he had his application in Forms RB1, RB9, and G77A that all explicitly informed him of his duty to report his excess earnings and returning to SPC Hospital. And so, specifically the regulations say that he can be found at fault in this exact circumstance because he knew or should have known that he had material information to report to the board. Thank you. Thank you, Mr. Polk. Thank you. Mr. Boyd, do you have any rebuttal? I do, Your Honor. I'll be brief. Just to correct a few things from opposing counsel. He stated that Mr. Muskie was warned multiple times. He was warned just once in that certification. And from June 2013 on, there was those misleading letters, as the courts pointed out. And opposing counsel said, first realized in December 2015, according to the record again, from June 2013 on, they knew the Social Security matches about Mr. Muskie's wages. Your Honor, you point out the damage to the ROB, if anything, it's self-inflicted. The second member, again, states the intent of the reporting requirements is to make sure that the ROB has the information needed to correctly compute an individual's immunity rate. They knew from June 2013 on that information. They had that information. Any damage to that is self-inflicted. The letters also. They affected Mr. Muskie's whether or not he knew, whether or not he should have known. And so opposing counsel keeps talking about this objective new or should have known standard. Those letters should be taken into account when determining whether or not Mr. Muskie's knew or should have known about his reporting requirements. And then finally, we're talking, we discussed understanding a little bit. The record does show that he didn't understand or was ignorant about what was going on. And this is on pages 8 and 171 of the administrative record. Again, this should trigger fact-finding, at the very least, under Anderson. I know he worked on the railroad. I don't know. I don't know whether he was a conductor, an engineer, or a dandy dancer, right? I don't, Your Honor, but I do know he worked for the railroad retirement for many years. And with that, I see my time is up. Thank you for your time. My honors. I want to thank counsel for an original and very well put-together argument on the case of Muskie's v. the U.S. RRB as submitted for determination.
judges: Siler, GOULD, BEA